Mr. Gleeson. I have four minutes and I'm dealing with the jurisdictional issue. My colleague Mr. Hand will be dealing with the merits issue. May it please the court. On the question of has the authority to bring this appeal. He was given that authority by VLB Associates, the patent owner. I'm sorry, what do you think it means for purposes of 141 that he has the authority, he's been appointed as an agent. So what relevance is that to satisfying the 141 requirement that the he was acting in the stead of the patent owner. As a matter of agreement between them, so what? In what respect does 141 allow a patent owner to say I appoint you as my agent, you sue in your own name. This was not a suit, your honor. This was a continuation of the re-examination I mean, the first time he came into the United States federal courts was under 141 here. So, and yet the patent owner did not do that. The patent owner did not do it because he delegated that to by agreement to the, to Mr. But my question is what in either 141 or some rule or something allows the patent owner not to be named in the case, but to delegate some litigating authority. There's nothing that says that specifically, your honor, but there's nothing that bars it by the same token. I mean, the notice of appeal did say the patent owner and Michael J. Valencourt. So he was acting in the stead, but there's nothing that says that you can't do it. There's nothing that says you can't do it either. Is the patent owner before us in this proceeding? Is the patent owner in the context of Mr. Valencourt? Yes. No, I'm just is the patent owner. The patent owner is the corporation, correct? That is correct. Is the corporation before this court in this proceeding? It has not entered into appearance, your honor, but it was, it was named in the, in the notice of appeal as patent owner, not as DLD associate. There's some, there's some debate about that. There is your honor. Yes. The patent owner is not named in the brief. It's not named in the brief. The patent owner has not filed a brief. That is correct, your honor. Then I fail to see how the patent owner is before us. Well, he's named as, named patent owner in the context of the notice of appeal. Well, not necessarily. Not as DLD, but as patent owner. I acknowledge that. Not necessarily. First of all, it's, the sentence suggests that that was just an alternative expression because it says patent owner and Michael Valencourt appeals. That's correct, your honor. So, it suggests that patent owner and inventor, Michael Valencourt. Well, he was not technically the inventor. He was the assignee, your honor. It was his father who was the inventor. Well, that adds just another level of confusion, but there was no brief filed by the owner. The owner hasn't entered an appearance, and I don't see how the owner, I don't see how you can say the owner is before us simply because there was some private agreement between them. A private agreement doesn't confer standing. Well, your honor, it would be, I don't know if this is a good analogy, but a power of attorneys would allow one person to legally represent someone else, and this is essentially a similar representation. We've been consistent with the statute, section 271, pretty finicky over time about keeping the parties straight with respect to who is entitled to pursue, to enforce patent rights, keeping cases like Durell and Lance, the Assignor. I agree that in the context of patent infringement actions, yes, there is enforcement, but this is not a patent infringement action. This is in the course of a reexamination proceeding. This is not where someone is seeking, for example, to collect back damages. This is to enforce a non-monetary right to protect the patent. But I guess why it seems relevant as context is that 141 says the owner gets to bring this proceeding. The owner is not here. Somebody purporting to act on behalf of the owner is here. Without impediment to the owner actually being named itself, if this were in a district court, I don't think the Federal Rules of Civil Procedure would allow a kind of representative capacity because the real party in interest actually does have to be named. So it's troubling. My time is running up. I don't want to run out. I'll let you have some more questions. Could you answer Judge Toronto's question? I'm not sure I quite asked the question. Was someone else going to address if we have anything to address the rest? Yes. Yes. It's a matter of law. The well-known case of Phillips v. AWH Corp. 415-5-3, 1303-1312 states, these two paragraphs of section 112 frame the issue of claim interpretation for us. The second paragraph requires us to look at the language of the claims to determine what the applicant regards as his invention. Phillips further states at page 1316, the Patent and Trademark Office determines the scope of claims and patent applications, not solely on the basis of claim language, but upon giving claims their broadest reasonable construction in light of the specification as it would be interpreted by one of ordinary skill in the art. Indeed, the rules of the Patent Office require the application claims must conform to the invention as set forth in the remainder of the specification. What's the mistake made in your opinion here? Excuse me? What is the error that you find here? The error is as stated by the Board at Appendix A-866. Accordingly, the Board's reliance on dictionary definitions to determine the broadest reasonably interpretation to the skilled artisan is appropriate. That is an error as a matter of law, pursuant not only to Phillips, but also other and in Ray Yamamoto, which was cited by Beckton Dickinson. And in Ray Zeltz, the Court stated, during patent examination, the pending claims must be interpreted as broadly as terms reasonably allow. When the applicant states the meaning that the claim terms are intended to have, the claims are examined with that meaning. In order to achieve a complete exploration of the and its relation to the prior art, and at page 322, the inquiry during examination... I'm sorry, can I interrupt you? Please do. I'm sorry. You didn't propose, if I remember right, correct me if I'm wrong, in the PTO, some change of claim language, in particular with respect to the slidingly... what's the terminology? The shield? No, the slidably mounted, as filed. So you didn't have a... even though slidably mounted might or might not cover something whose end point is fixed, but whose... the rest of which is in fact sliding. You're referring to claim 4, the dependent claim. That requires slidable mounting. Yes. And your question is? What was wrong with the PTO saying that actually could reasonably cover the crushed, the kind of collapsible one in your prior art predecessors? I think the prior art predator you're referring to is Allenport 966, or 766, Appendix 948, which is the inventor's earlier structure, in which you have what he called a boot at the time, is that at one end you have a fixed enlarged diamond, you have a tube that's collapsible, and you have a septum seal at the end. He distinguishes this in his specification in the patent, in our patent. In that case, you collapse the tube, there's no slidable mounting. In fact, if you look at figure 3 on A950, the septum is at 31. If that was in contact with that tapered bore, it couldn't move it. It wouldn't slide on it. It has to be a gap. And this particular patent specifically requires a gap. So for the board to say that that is, quote, slidably mounted, is a large leap of faith, as a matter of fact. So the standard is, if, as it said itself, if the claim doesn't appropriately claim the invention regarded by the applicant, but claims it to be rejected on a 35 U.S.C. 112, there's no such rejection in this case. So one would say, what is the invention? Are you saying that there should be no claim interpretation under a broadest, reasonable construction standard? In light of the specification. I'm still not sure what you're advocating. Are you saying there should be only one standard for claim construction? Namely, the standard set forth in Phillips? This court said in Phillips, this reason is 2005. I'm asking the question, and I'm not sure you're answering my question. Are you saying that there should only be one standard for claim construction? Namely, the standard set forth in Phillips? I'm saying the law, as we know today, relies upon Phillips. If this court chooses to change that, it's their prerogative. But as far as the law is concerned today... In the patent office, there's a different standard that's applied. Yes, and that's what Phillips also says. They have a different standard. But they also have to look at the specification. It states, the patent office determines the scope of the claims and patent applications, not solely on the basis of claim language, but upon giving claims the broadest, reasonable construction in light of the specification, as would be interpreted by one of ordinary skill in the art. The court goes on. It is therefore entirely appropriate for a court when conducting claim construction to rely heavily on the written description for guidance as to the meaning of the claim. Here, the patent office said, we don't have to look at that. We're going to look at dictionary terms, and it's entirely appropriate. This court in Phillips said, yes, you can look at the dictionary, but that's extrinsic evidence. We're not going to abide by that. All right, let's hear from Mr. Wigmore. May it please the court, my name is Amy Wigmore, and I represent the appellee, Becton Dickinson and Company. I would first like to address the issue of standing. Mr. Valancourt, the appellant in this matter, does not own the 221 patent, and therefore this case should be dismissed for lack of subject matter jurisdiction. In 1990, the Supreme Court decided a case called Franchise Tax Court of California versus Alcan Aluminium. In that, they said that a shareholder, not the party, had standing to sue because he would be injured, harmed by the diminution in the value of the stock that would be occasioned by taxation if it were upheld in that case. That was a pretty broad view of standing that kind of went past everything to find even a minimal sort of injury was enough. Why doesn't that reasoning apply here? This case is distinguishable from that on a number of levels. The first is that Mr. Valancourt cannot claim any injury. He does not own the patent. He has assigned the patent. The patent has been found invalid by the board, and that is an injury that is suffered by not Mr. Valancourt, but the company ZLV, which is not an appellant. Moreover, standing in appeals of interpartisan re-exams, there's a statutory requirement as to who may bring an appeal, and that provision provides that only the patent owner or the third party requester, in the event of a different outcome, may bring the appeal. One of the questions that this court raised in its order on our motion to dismiss was whether standing should be treated differently in the case of a re-exam as opposed to a patent infringement case. The answer is no. There are a few cases that this court has decided involving ex parte re-exams, the Boeing case and the Syntex case, both cited in our briefs. In those cases, a third party requester of an ex parte re-exam was found not to have standing to appeal because the statute does not give the third party requester in the ex parte context the right to appeal to the federal circuit. This case is identical in the sense that Mr. Valancourt, the non-patent owner, is not given the right to appeal by section 141. Moreover, he lacks constitutional standing given the lack of injury now that he has transferred the patent to another entity, and there is no credential standing. Can I ask you about that? It seems to me that the analysis might be different depending on what you just identified as two different kinds of standing inquiries, the constitutional and the statutory. Now, as the sole owner of a corporation whose value would be harmed, it's a little implausible to me to think that he would not be indirectly harmed, and maybe or maybe not that's enough for Article III standing depending on whether one would consider that, I think, undeniable factual injury a cognizable injury. But that's not the understanding. Statutory standing, which I think here is pretty much the same thing as whether the 141 cause of action applies to him, is a different matter. Is that what you're trying to distinguish? Actually, I argue that there's no standing under any of those issues under statutory standing, constitutional standing. You'd have a little more trouble with the Article III standing, though, wouldn't you? Well, in the Lam's case, which we cited in our brief, there was an owner of a corporation who was an inventor who did not own the patent. He tried to bring a suit enforcing the patent, and the court held that he could not, that there was no standing because he was not the patent owner. That was an infringement context, but it's the same scenario where he was claiming injury as a result of the patent, and he was not able to enforce those rights. But in that case, the determination was there was a lack of a prudential standing, not a constitutional standing. That's correct, and that's also lacking here. The concept of prudential standing is that one party should not be able to enforce the legal rights and interests of another party who's capable of doing that, him or herself. In this case, the party that's injured, the party that has the statutory right, is VLV, and there's no dispute that VLV is not a party to this appeal. I'd also like to briefly address the claim construction issue, and Mr. Hand has argued that the Patent Office applied the inappropriate standard. We disagree. Phillips makes clear that ordinary meaning is the primary basis for claim construction before you look to anything else, and that is precisely what the Board did at pages A774 and 775 of the appendix, that is, the Board's claim construction analysis. And the Board was very clear that it was applying the ordinary meaning of the terms bore and septum seal, which are the claim terms that Mr. Valencourt focuses on in his brief. The Board found that the ordinary meaning of those terms was consistent with its construction and relied on the dictionary definition to support that ordinary meaning. This is an inter partes review. That's correct. Should the broadest reasonable interpretation apply when somebody already has a patent? Absolutely, it should apply in an inter partes re-exam because there's an opportunity to amend the claim, which is the purpose behind the broadest... The argument that is put forth, but of course, as a matter of practicality, that's... First, it hasn't happened, and second, it's not likely to happen because it changes the application of damages law and intervening rights and so on and so forth. Looking just at the practicalities of keeping district court proceedings in line with the inter partes review, is there a stronger argument in favor of having the same claim interpretation standard applied in both the administrative and the judicial proceeding? Well, that may or may not be the case. In this instance, there were amendments to the claims, but more importantly, whether you apply the broadest reasonable interpretation standard or the general claim construction framework of Phillips, the board's construction is legally proper. Would it be... Do you think if you amended the claims and then we're looking at new claims that did not happen before, it might be wise to use broadest reasonable interpretation? But where that doesn't happen, would you think there'd be wisdom in keeping the claim interpretation methods uniform? Well, in this case, it's difficult to answer that question because there were no... I'm asking kind of outside the realm of this case, am I not? Outside the realm of this case, that argument could be made. But even if you apply the Phillips standard, the court's construction is consistent with that, that the board, excuse me, the board found the ordinary meaning of the... You don't want to talk to me about... I would say under either standard... The broader principles of how the system ought to work, you want to stick with your narrow little case. That's correct. Well, let me try it this way. How about... Thank you. Help me out. Judge Lynn, excuse me. How about hypothetically speaking, if a party, a patentee in an inter-party re-exam at the outset waives any right to amend and elects to proceed without amendment, could that party then insist that the patent office apply the Phillips standard and not the broadest reasonable interpretation? Arguably, they could because the rationale that's provided in support of the broadest reasonable interpretation standard is this opportunity to amend. But importantly, in this case, Mr. Valencourt does not offer in this appeal, did not offer before the board, his own ordinary meaning of the terms that are in dispute here. I understand. Another question. Again, just hypothetically speaking, what is your understanding of what the broadest reasonable interpretation standard is? Because I'm not exactly sure what that is. Seems to me, if you say there's a broadest reasonable interpretation, that suggests or implies that there's more than one interpretation. It may. The broadest reasonable interpretation, and if you have two or more reasonable interpretations, isn't that sort of the definition of ambiguity? It may be. In this case, there are no competing interpretations. I know you keep running back to this case. I'm just talking apart from this case, just as a matter of understanding. Could I talk to you about how one might think about this issue? Broadest reasonable interpretation. In this context, the only reasonable interpretation has to be linked to the specification and what it says and the Phillips methodology as a whole. Therefore, the broadest reasonable interpretation and the narrowest reasonable interpretation, in order both to be reasonable, are going to be the same. Maybe we've got a board that's making significant errors in looking at the word broadest instead of looking at the word reasonable. Does that make sense to you? It makes sense to me that they could be the same. In this case, they are the same. Whether the board used broadest reasonable interpretation consistent with the specification or the ordinary Phillips framework, the answer is the same. It's based on the ordinary meaning. Mr. Valencourt's proposed construction in this appeal are efforts to narrow the claim terms based on embodiments in the specification. Under Phillips, that's improper. You do not need the broadest reasonable interpretation standard to reject those. Can you walk through the specifics of the slightly mounted piece of it? And in particular, I think the second attorney for the other side made some reference to a piece of the specification. I think it was of this patent, but maybe it was the fire art patent. I'm not sure. Certainly. It's bearing on what reasonable interpretation there is of that term. Certainly. We're talking about Rejection 16 of Claim 4 of the 221 patent, and Mr. Valencourt's argument relates to whether the septum seal is slightly mounted in the bore. That's Claim 4 at A882. I think looking at the figures would be helpful, and the prior art that he's referring to that forms the basis for the rejection is the Valencourt 766 patent. That can be found figures 1 and 2 at page A949, or also in our brief at page 16. So one can see from figures 1 and 2, item number 55 is this septum seal called the valve membrane. And you see from the figure that number 55, when the device is in use, gets scrunched up, for lack of a better word, it moves toward the distal end of the device. The board found that this slightly mounted requirement is satisfied because the valve membrane as a whole is moving. Mr. Valencourt's argument is that a portion of that valve membrane, the distal side that's actually locked in, fixed, that portion of the septum seal doesn't move. But what the board found is the septum seal as a whole, number 55, does move forward. And that's why the slightly mounted— I'm sorry, this is so unbelievably trivial, but I'm looking at A949. Where's the 55? Figure 3 shows— Figure 3, the next page? Yes, and what figure 1 and 2 show is how the device operates. So, you see how one end of it is fixed to the bore, and one end is not, and the end that is not fixed moves forward to have this compressed area. Is scrunching the same as sliding? That issue did not come up before the board, that scrunching was my word to describe what's going on in the figure. I like it, is scrunching sliding? Yes, the septum seal as a whole is sliding forward. But doesn't sliding imply or not require some contact? There's nothing in the specification that would require that narrowing interpretation. The board found, looking at the specification— Well, it's not narrowing, it's just, isn't that the ordinary meaning? If something slides on something else, there's contact. And there is sliding of the septum seal as a whole consistent with the board's factual finding, which is owed deference. You have movement of the septum seal as a whole. But movement is different from sliding, is it not? You have sliding of the septum seal as a whole because it's moving forward. Now, one portion of it, if you focus on only a portion of the element, does not move. But the whole unit, the septum seal unit as a whole— But it's sliding in the bore, not on the bore, which is the clan language. There was no issue raised as to whether on the bore or in the bore had any different meaning. But here what you have is a seal, a membrane, that moves and has the effect of what the claim for requires. And in this case, there's nothing in the specification that requires a narrower meaning. Mr. Valencourt hasn't proposed an alternative ordinary meaning of the term. Can I just—I should remember this, but the language that you've used, on the whole, is that your language or the board's language? The board, I believe—I don't know that I'm quoting them, but they were referring to element 55 as a whole moves, whereas Mr. Valencourt was referring to portions of 55, the fixed part toward the distal end of the device that didn't move. The issue that the board addressed was, does a portion of the septum seal need to move or does the septum seal as a whole need to move? And it adopted the latter determination. And it's a determination of fact that is entitled to deference and supported by substantial evidence. And unless there are further questions— All right. Thank you, Ms. Wigmore. Thank you. Excuse me. Does Mr.—does the Valencourt party have rebuttal time remaining? Yes, they do. Unless your Honor has any questions, we'll waive that. All right. Thank you very much.